1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN DARWIN, IV,                    No.  2:14-cv-0740 AC

12              Plaintiff,

13        v.                             ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner Of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II

20   of the Social Security Act, 42 U.S.C. §§ 42 U.S.C. §§ 401-34, and for Supplemental Security

21   Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.

22   DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and

23   who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New

24   York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.

25   § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of

26   Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental

27   Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including

28   children, whose income and assets fall below specified levels . . .").

1

For the reasons that follow, the court finds that the ALJ erred (1) by rejecting plaintiff's testimony regarding his back pain and knee pain and the limitations they cause, and (2) by rejecting the opinion of plaintiff's treating physician, Cynthia Pena, M.D., regarding plaintiff's knee pain and the limitations it causes. See infra § VI(B) & (C). Accordingly, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand the matter to the Commissioner for an immediate award of benefits.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on February 24, 2010. Administrative Record ("AR") 325.[1] Both applications alleged a disability onset date of April 7, 2009.[2] Id. Both applications were disapproved initially, AR 366-71 (Exh. 1B), and on reconsideration, AR 373-77 (Exh. 3B). Plaintiff thereupon requested a hearing before an administrative law judge ("ALJ"), to challenge the disapproval. AR 379-80 (Exh. 4B). On September 12, 2012, ALJ David R. Mazzi presided over the hearing. AR 338-61 (transcript of hearing). At this hearing, plaintiff was represented by an attorney. Id. Plaintiff testified at the hearing, as did a vocational expert, Sandra Schneider. Id.

In a decision dated October 12, 2012, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 325-37 (decision and exhibit list).

Plaintiff asked the Appeals Council ("Council") to review the ALJ's decision. AR 319. On January 23, 2014, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 3-9. Plaintiff filed this action on March 21, 2014. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). In due course, plaintiff was granted leave to proceed in forma pauperis, the parties consented to the jurisdiction of the magistrate judge, the

---

[1] The AR is electronically filed at ECF Nos. 14-3 to 14-21 (AR 1 to AR 1,422).

[2] In his summary judgment motion, plaintiff amended his onset date to April 7, 2009. Plaintiff's Motion for Summary Judgment (ECF No. 17) at 3.

1  Commissioner answered and filed the administrative record, and the parties filed and fully briefed

2  the pending cross-motions for summary judgment.  ECF Nos. 5, 9, 12-14, 17, 21, 22.

3  <div align="center">Dr. Frank Chen</div>

4  In his response to the Commissioner's cross-motion for summary judgment, plaintiff

5  asserted that he had learned that the Commissioner "is apparently reviewing all adverse decisions

6  involving examinations by Dr. Frank Chen," a doctor who examined plaintiff in this case.  See

7  ECF No. 22 at 1-2.  The court accordingly asked the Commissioner to address the issue,

8  "particularly the assertion that the Commissioner may be reviewing the underlying decision here,

9  and/or considering providing some form of relief to plaintiff."  ECF No. 23 at 2.  The

10  Commissioner asserted that she "is not presently reviewing Plaintiff Darwin's decision," but that

11  in any event, "substantial evidence supports the decision even without Dr. Chen's opinion."  ECF

12  No. 24 at 2.[3]

13  The court has examined the record and determined that the ALJ essentially rejected

14  Dr. Chen's report.  Dr. Chen concluded that plaintiff had "no functional limitations on a medical

15  basis."  AR 806 (Exh. 7F).  The ALJ, however, found "claimant's combination of severe

16  impairments more consistent with the above residual functional capacity for a range of work at

17  the light exertional level," and also recognized a limitation arising from plaintiff's asthma.

18  AR 328, 330.  Since no one challenges the ALJ's rejection of Dr. Chen's opinion, it will not be

19  considered here.

20  <div align="center">II.  FACTUAL BACKGROUND</div>

21  Plaintiff was born on August 17, 1963, and was 46 years old on the alleged onset date of

22

23  [3]  The Commissioner also asserted that "the Commissioner lacks jurisdiction over the Darwin
   matter" because it is "before this Court rather than administratively before the agency . . .."  ECF
24  No. 24 at 2.  However, the Commissioner apparently retains the authority to request (or stipulate
   with plaintiff) that the district court remand the case back to the agency, where appropriate.  See,
25  e.g., Melkonyan v. Sullivan, 501 U.S. 89, 92 (1991) ("[w]hile the summary judgment motions
   were pending, the Secretary requested that the case be remanded to the Appeals Council so the
26  first application could be reconsidered in light of the new evidence"); cf. 20 CFR §§ 404.951(b)
   (noting that the claimant is entitled to the administrative transcript upon timely appeal to the
27  district court "unless we request the court to remand the case"), 416.1451(b) (same).

28

1   his disabilities, April 7, 2010.  AR 331.  Plaintiff has an 11th-grade education and can

2   communicate in English.  AR 453, 455 (Exh. 3E).  Plaintiff has a job history from 1996 to 2009.

3   AR 437-48 (Exh. 1E).

4                              III.  LEGAL STANDARDS

5          The Commissioner's decision that a claimant is not disabled will be upheld "if it is

6   supported by substantial evidence and if the Commissioner applied the correct legal standards."

7   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

8   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

9   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

10          Substantial evidence is "more than a mere scintilla," but "may be less than a

11   preponderance."  Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

12   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

13   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

14   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

15   suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

16   Although this court cannot substitute its discretion for that of the Commissioner, the court

17   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

18   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

19   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

20   court must consider both evidence that supports and evidence that detracts from the ALJ's

21   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

22          "The ALJ is responsible for determining credibility, resolving conflicts in medical

23   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

24   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

25   which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

26   278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

27   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

28   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

1  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on
2  evidence that the ALJ did not discuss").

3       The court will not reverse the Commissioner's decision if it is based on harmless error,
4  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
5  ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)
6  (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
7  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

8  <center>IV.  RELEVANT LAW</center>

9       Disability Insurance Benefits and Supplemental Security Income are available for every
10  eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is
11  "disabled" if he is "'unable to engage in substantial gainful activity due to a medically
12  determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)
13  (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

14       The Commissioner uses a five-step sequential evaluation process to determine whether an
15  applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);
16  Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation
17  process to determine disability" under Title II and Title XVI).  The following summarizes the
18  sequential evaluation:

19
20       Step one: Is the claimant engaging in substantial gainful activity?  If
     so, the claimant is not disabled.  If not, proceed to step two.

21  20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

22       Step two: Does the claimant have a "severe" impairment?  If so,
     proceed to step three.  If not, the claimant is not disabled.

23  Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

24       Step three: Does the claimant's impairment or combination of
25  impairments meet or equal an impairment listed in 20 C.F.R., Pt.
404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not,
26  proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

27
28       Step four: Does the claimant's residual functional capacity make
him capable of performing his past work?  If so, the claimant is not

<center>5</center>

1    disabled.  If not, proceed to step five.

2 Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

3    Step five: Does the claimant have the residual functional capacity
     perform any other work?  If so, the claimant is not disabled.  If not,
4    the claimant is disabled.

5 Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

6    The claimant bears the burden of proof in the first four steps of the sequential evaluation

7 process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or

8 disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden

9 if the sequential evaluation process proceeds to step five.  Bowen, 482 U.S. at 146 n.5.

10                                V.  THE ALJ's DECISION

11    The ALJ made the following findings:

12        1. Claimant meets the insured status requirements of the Social
          Security Act through March 31, 2014.
13
          2. [Step 1] Claimant has not engaged in substantial gainful activity
14        since April 7, 2009, the alleged disability onset date (20
          CFR 404.1571 et seq., and 416.971 et seq.).
15
          3. [Step 2] Claimant has the following severe impairments:
16        hypertension; coronary artery disease, status-post stent placement,
          hypertension, asthma, obesity, status- post minimally displaced
17        acute fracture of the proximal fibula, and affective disorder (20
          CFR 404.1520(c) and 416.920(c)).
18
          4. [Step 3] Claimant does not have an impairment or combination
19        of impairments that meets or medically equals the criteria of any
          section of the Listing of Impairments at 20 C.F.R., Part 404,
20        Subpart P, Appendix 1 for the requisite period (20 FR 404.1520(d),
          404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
21
          5. [Step 4] After careful consideration of the entire record, I find
22        that claimant has the residual functional capacity to perform light
          work, as defined in 20 CFR 404.1567(b) and 416.967(b), except
23        with the need to avoid exposure to concentrated respiratory irritants
          secondary to asthma.  In addition, on a non-exertional basis,
24        claimant has the capacity to perform, at least simple repetitive tasks
          with a preclusion from public contact.
25
          6. [Step 4, continued] Claimant is unable to perform any past
26        relevant work (20 CFR 404.1565 and 416.965).

27        7. [Step 5] Claimant was born on August 17, 1963 and was 45 years
          old, which is defined as a younger individual age 18-49, on the
28        alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Step 5, continued] Claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Claimant has not been under a disability, as defined in the Social Security Act, at any time from April 7, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 325-32.

## VI.  ANALYSIS

Plaintiff argues that the ALJ erred in that: (1) his residual functional capacity ("RFC") assessment is not supported by substantial evidence; (2) his adverse credibility finding is not supported by substantial evidence; (3) the ALJ improperly rejected the medical opinion of Dr. Cynthia Pena; and (4) the Appeals Council improperly failed to consider evidence plaintiff submitted to the Council on January 22, 2014 (one day before the Council denied review of the ALJ's decision).

A.  <u>Residual Functional Capacity Assessment</u>

Residual functional capacity ("RFC") is "the most that a claimant can do despite 'physical and mental limitations' caused by his impairments and related symptoms." <u>Zavalin v. Colvin</u>, 778 F.3d 842, 845 (9th Cir. 2015); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 WL 374184 at *2 ("Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis . . .") (emphases in text).[4]  Plaintiff asserts that the ALJ failed to consider the combined effect of

---

[4]  The SSRs ("Social Security Rulings") "'are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy and interpretations' of the SSA."  <u>Bray v. Commissioner of Social Security Admin.</u> 554 F.3d 1219, 1224 (9th Cir. 2009) (quoting 20 C.F.R. § 402.35(b)(1)).  They "do not carry the 'force of law,' (continued…)

1   injuries plaintiff suffered in 2008 to his neck, right shoulder and right elbow.  Plaintiff's Motion

2   for Summary Judgment ("Plaintiff's Motion") ECF No. 17 at 8.

3                          1.  <u>Neck, right shoulder and right elbow</u>

4           The ALJ noted, at Step 2, that plaintiff "suffered injury to his neck, right shoulder and

5   right elbow in a September 2008 motor vehicle accident."  AR 327.  The ALJ concluded

6   however, that "these do not represent severe impairments."  AR 327.

7           Plaintiff does not challenge this Step 2 finding, notwithstanding his unsupported assertion

8   that "some of the impairments that the ALJ found were 'non-severe' were in fact significantly

9   work limiting, and therefore are 'severe.'"  Plaintiff's Motion at 8.  Plaintiff contends, however,

10   that it was error for the ALJ not to consider the impairments of his neck, right shoulder and right

11   elbow, even if they are independently non-severe, in combination with plaintiff's other

12   impairments in assessing RFC.

13           The applicable regulations and policy interpretations – along with the controlling case law

14   – teach that a "non-severe" impairment may still be "critical to the outcome of a claim."  SSR

15   96-8p.  That is because:

16                 in combination with limitations imposed by an individual's other
                   impairments, the limitations due to . . . a "not severe" impairment
17                 may prevent an individual from performing past relevant work or
                   may narrow the range of other work that the individual may still be
18                 able to do.

19   SSR 96-8p; <u>Howard</u>, 341 F.3d at 1012 ("the ALJ must consider the 'combined effect' of all the

20   claimant's impairments without regard to whether any such impairment, if considered separately,

21   would be of sufficient severity"); 20 CFR §§ 404.1523 ("we will consider the combined effect of

22   all of your impairments without regard to whether any such impairment, if considered separately,

23   would be of sufficient severity"), 416.923 (same); SSR 85-28, 1985 WL 56856 ("[a]lthough an

24   impairment is not severe . . . , the possibility of several such impairments combining to produce a

25   

26   _____

27   but they are binding on ALJs nonetheless."  <u>Id.</u>  The SSRs reflect the Commissioner's official
     interpretation of her own rules, and "are entitled to 'some deference' as long as they are
     consistent with the Social Security Act and regulations."  <u>Id.</u>

28

1    severe impairment must be considered").[5]

2          The ALJ suggests that he did consider those injuries.  He states that "[a]ll impairments . . .

3    regardless of severity, have been considered in combination in assessing the residual functional

4    capacity . . . ."  AR 327.[6]  Plaintiff seems to dispute the accuracy of this representation, arguing

5    that the ALJ "omitted" from his RFC analysis "plaintiff's allegations regarding his neck, right

6    shoulder, [and] right elbow that were injured in 2008."  Plaintiff's Motion at 8.

7          Turning to the RFC assessment, the ALJ expressly considered plaintiff's allegations

8    regarding his "chronic back and knee pain," medications that tire him out, high blood pressure,

9    periodic chest pain, coronary artery disease, asthma, hypertension, acute fracture of the "proximal

10   fibula," chronic headaches, left shoulder pain, depression, anxiety, adjustment disorder and foot

11   pain.  AR 329-30.  Thus, it appears plaintiff is correct that the ALJ did not consider the neck,

12   right elbow and right shoulder injuries "in combination" with plaintiff's other impairments in

13   determining plaintiff's RFC.

14         However, this omission would be at most harmless error absent evidence that these "not

15   severe" impairments contributed to any functional limitations.  See Robbins, 466 F.3d at 885

16   (harmless error exists when it is "clear from the record that an ALJ's error was 'inconsequential to

17   the ultimate nondisability determination'") (quoting Stout, 454 F.3d 1050 at 1055).  For an

18   impairment of any kind to be included in the RFC, it must cause or at least contribute to "a

19   physical or mental limitation or restriction of a specific functional capacity."  See SSR 96-8p;

20   Zavalin, 778 F.3d at 845 (RFC is "the most that a claimant can do despite 'physical and mental

21   _____

     [5]  Plaintiff misstates the standard, contending that "a 'medically determinable impairment' that is
22   not 'severe' (work limiting) when considered alone, may in fact be 'severe' when considered in
     the context of all the other 'severe' and 'non-severe' medically determinable impairments."
23   Plaintiff's Motion at 8.  This is incorrect.  Context does not make a non-severe impairment into a
     severe impairment.  Rather, the cumulative effect of severe and non-severe impairments must be
24   considered in assessing RFC.

     [6]  However, the ALJ's statement is arguably ambiguous.  It could be interpreted as a finding that
25   the alleged neck, right shoulder and right elbow impairments (1) are non-existent, or (2) do exist,
     but are not severe.  Since the decision states that "[a]ll impairments" are considered regardless of
26   their severity, and this statement immediately follows the ALJ's finding that the injuries (and the
     alleged left shoulder pain) "do not represent severe impairments," the court interprets the decision
27   as saying that these are existing, but "not severe," impairments.

28

9

1   limitations' caused by his impairments and related symptoms").  In the portion of his brief

2   addressing this issue, plaintiff identifies nothing in the administrative record showing that the

3   neck, right shoulder and right elbow injuries, whether considered singly or in combination with

4   other impairments, had any effect on plaintiff's functional capacity.  Instead, plaintiff simply

5   recounts plaintiff's doctor's visits relating to those injuries, as well as visits occurring before the

6   car crash.  See Plaintiff's Motion at 9-12.

7                    a. Plaintiff's evidence

8                      i. Right elbow

9       As for his right elbow, plaintiff describes how he complained of "pain . . . out the roof,"

10  and "popping," that the examining doctors noted "[t]ender, golf-ball size fluctant swelling tip of

11  right elbow," tenderness, puffiness, fluid build-up, "significant" pain, inflammation and "edema,"

12  and that his doctors drained off fluid from the affected areas, advised him to wear an ACE

13  bandage, gave him steroid injections and prescribed pain medication.  Id.  None of these

14  descriptions sounds particularly pleasant, and perhaps these symptoms could cause functional

15  limitations.  However, plaintiff fails to allege that this alleged impairment caused any functional

16  limitations, either alone or in combination with others.  The ALJ is not permitted to conjure up

17  functional limitations on his own – even if he thinks they could possibly be caused by the

18  symptoms described – where the plaintiff has not alleged any such limitations or restrictions, nor

19  pointed to evidence of such limitations or restrictions in the record.  Instead, he "must consider all

20  allegations of physical and mental limitations or restrictions  and make every reasonable effort to

21  ensure that the file contains sufficient evidence to assess RFC."  SSR 96-8p, 1996 WL 374184

22  at *5 (emphasis added).  If plaintiff does not allege any such limitations or restrictions, and does

23  not point to evidence of such in the record, the ALJ is constrained to find that there is no such

24  limitation or restriction:

25              when there is no allegation of a physical or mental limitation or
               restriction of a specific functional capacity, and no information in

26             the case record that there is such a limitation or restriction, the
               adjudicator must consider the individual to have no limitation or

27             restriction with respect to that functional capacity.

28  SSR 96-8p, 1996 WL 374184 at *3. Here, the only allegation relating to any functional

1    "limitation" relating to his elbow is that there was a "Full range of motion in elbow."  Plaintiff's

2    Motion at 10 (quoting AR 579 (Maria Carter, D.O.)).

3                                                      ii.  <u>Neck</u>

4           Regarding his neck, plaintiff again merely recounts his doctor visits.  <u>See</u> Plaintiff's

5    Motion at 12.  He reports that plaintiff's neck (and right shoulder) were injured in the September

6    2008 car crash, that he had neck problems even before then, that he had neck pain, that an x-ray

7    showed "mild cervical degenerative changes but no fracture," and that a subsequent x-ray found

8    "[s]oft tissue ossification posterior to C6 and C7 may be the result of heterotrophic ossification.

9    No definite fracture.  Changes were present in June 2008."  <u>Id.</u>  Plaintiff does not explain what is

10   the legal effect of any of these undefined medical terms, descriptions and laboratory results.

11   More importantly, though, plaintiff does not allege that any of these medical findings point to any

12   functional limitation or restriction caused by the injury to the neck, either alone, or in

13   combination with any other impairments.

14                                               iii.  <u>Right shoulder</u>

15          Regarding his right shoulder, plaintiff provides no information at all, other than to note

16   that it was injured in the September 2008 car crash.  Plaintiff's Motion at 12.  He makes no

17   allegation, and identifies no medical findings or reports showing, that the injured shoulder caused

18   any functional limitation or restriction of any kind, either alone or in combination with other

19   impairments.

20                                           b.  <u>Commissioner's evidence</u>

21          Meanwhile, there is substantial evidence in the administrative record that the injuries to

22   plaintiff's neck, right elbow and right shoulder were not severe impairments, and caused no

23   functional limitations.  On March 27, 2010, Rizwan Tokhi, M.D., examined plaintiff.  Plaintiff

24   had no complaints regarding his right shoulder, right elbow, or neck.  AR 792.  Dr. Tokhi

25   specifically found "normal range of motion" in plaintiff's extremities.  <u>Id.</u>

26          Further, the Commissioner identifies doctor visits that do not identify any problem with

27   plaintiff's neck.  On November 4, 2011, plaintiff was admitted to Sierra Vista Hospital as an

28   involuntary "5150" patient because he was hearing voices.  AR 865 (Exh. 14F).  Martin Ramirez,

                                                        11

M.D., examined plaintiff and said of his neck: "Supple.  No jugular venous distention, carotid bruits or thyromegaly."  AR 871, 874.  Other doctors reported plaintiff's neck to be "supple," including A. Jirasritumrong, M.D., AR 1083 (October 14, 2010), 1091 (August 11, 2010), 1117 (March 16, 2010), Gordon Sweeney, M.D., AR 1165 (April 23, 2012), Cyrus r. Mancherje, M.D., AR 1242 (November 3, 2011), and James B. Norwood, M.D., AR 1331 (April 4, 2012).

The Commissioner also identifies doctor visits resulting in "normal examinations" of plaintiff's upper extremities, including those by Terrence Coulter, M.D., AR 633 (May 13, 2009) ("Extremities: No clubbing, cyanosis, or edema"), Laura Harbison, D.O., AR 644 (May 11, 2009) ("No obvious deformities.  No edema."), Kyle Griffin, M.D., AR 722, 745 (December 31, 2009 and May 18, 2009) ("Normal ROM [range of motion] to neck, back and extremities but does this with some guarding as if he is expecting pain to his back"), Gordon Sweeney, M.D., AR 788 (March 7, 2010) ("No edema.  Distal pulses intact."), Rizwan Tokhi, M.D., AR 792, 1165 (March 27, 2010 and April 23, 2012) ("Normal range of motion.  Normal tone.  No swelling.  No tenderness.  no cyanosis, no edema"), and Alkkachai Jirasritumrong, M.D., AR 1399 (September 10, 2012) ("No edema is present").

The Commissioner also identifies doctor visits resulting in "normal examinations" of plaintiff's elbows.  In support, she cites reports by several doctors, that do not show any degenerative arthritis of the elbow or elbow pain, namely, Mayre Lee, M.D., AR 1373 (July 31, 2012), 1375 (May 7, 2012), 1385 (August 2, 2011), and Cynthia Pena, M.D., AR 1377 (March 7, 2012), 1381 (January 17, 2012), 1383 (September 30, 2011), 1389 (April 8, 2011).

On August 12, 2010, M. Friedman, M.D., a medical consultant, completed a Physical Residual Functional Capacity Assessment.  AR 886-90 (Exh. 15F).  Dr. Friedman reports no functional limitations in any area, except that plaintiff should "avoid concentrated exposure" to "fumes, odors, dusts, gases, poor ventilation, etc."  AR 889.[7]

////

---

[7]  This report is a part of the administrative record, however, neither the ALJ nor the Commissioner makes any reference to it in their briefs to this court.

1          c. Conclusion

2          By failing to even allege that his neck, right shoulder or right elbow injuries, alone or in

3    combination, caused a functional limitation or restriction, and by failing to identify any medical

4    evidence of such a limitation or restriction, plaintiff left the ALJ, and now this court, with no

5    choice but to find that these injuries cause no functional limitations.  Therefore, even if it was

6    error for the ALJ not to separately consider them, it was harmless.

7          2. Anxiety

8          Plaintiff argues that the ALJ "did not discuss the significant anxiety noted in the plaintiff's

9    medical records."  Plaintiff's Motion at 12.  Once again, plaintiff ends his argument after stating

10   that this disorder exists.  He makes no reference to any functional limitation, or any allegation of

11   one, created by his anxiety disorder.  In support of his argument, the only evidence plaintiff

12   identifies is the medical reports from Burrell Behavioral Health.  Id.; see AR 615-21 (Exh. 3F).

13   As plaintiff asserts, those reports contain a diagnosis of "Anxiety Disorder, NOS."  AR 617.  But

14   they contain no information about how that disorder affects plaintiff's ability to engage in basic

15   work activities, or how it limits any of his functional abilities.

16         In addition, plaintiff does not indicate how the ALJ erred in his RFC assessment regarding

17   plaintiff's anxiety.  The ALJ specifically referenced medical reports regarding plaintiff's anxiety,

18   and explained how they affected his decision-making.  See AR 330 (discussing Exh. 8F, Jacklyn

19   Chandler, Ph.D.).  While plaintiff is correct that the ALJ did not specifically reference the Burrell

20   Behavioral Health records, the ALJ does acknowledge that Jacklyn Chandler, Ph. D., "diagnosed

21   adjustment disorder with mixed anxiety and depressed mood, chronic, with panic attacks and a

22   global assessment of function (GAF) of 55."  AR 330.  The ALJ then took this information, along

23   with Dr. Chandler's opinions of the mild and moderate impairments created by plaintiff's anxiety,

24   into account in the RFC, finding that plaintiff should be limited to work with "limited public

25   contact," or even "preclusion from public contact."  AR 330 & 331.

26         Applying the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Pt. 404, App. 2, the

27   ALJ determined that plaintiff's "additional limitations," which presumably include his limitation

28   to work not involving public contact, has "little or no effect on the occupational base of unskilled

light work."  AR 332.  While the ALJ cited SSR 85-15 for this conclusion despite its apparent

inapplicability,[8] the conclusion nevertheless flows from the applicable regulations, which state

that "the primary work functions in the bulk of unskilled work relate to working with things

(rather than with data or people)."  20 C.F.R. Pt. 404, App. 2 ¶ 202.00(g).

Plaintiff accordingly identifies no error in the ALJ's alleged failure to mention his anxiety

disorder.

### 3. Asthma

Plaintiff argues that while the ALJ found that plaintiff's asthma was a severe impairment,

the ALJ "did not appreciate the severity of this condition."  Plaintiff's Motion at 13.[9]  It is not

clear what legal or factual error is alleged here, so the court will examine the ALJ's overall

treatment of plaintiff's severe impairment of asthma.

At Step 2, the ALJ found that plaintiff had the "severe impairment" of asthma.  AR 327.

At Step 3, the ALJ found that plaintiff did not have an "impairment or combination of

impairments" that met or medically equaled "the criteria of any section of the Listing of

Impairments at 20 C.F.R., Part 404, Subpart P, Appendix 1."  Although the subsequent

discussion mentions only plaintiff's mental health, the finding implicitly includes plaintiff's

asthma.  Plaintiff offers no explanation for why this finding was error, although he does cite

plaintiff's hospital visit at CoxHealth Family Medical Care Center on May 11-15, 2009 for "acute

asthma exacerbation and chronic bronchitis."  Plaintiff's Motion at 14; see AR 632-58, 745.

There is substantial evidence in the administrative record for the ALJ's conclusion.

---

[8]  SSR 85-15 is limited to claims involving solely nonexertional claims, and is inapplicable to claims where, as here, the claim involves both exertional and non-exertional limitations.  Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996) ("SSR 85-15 has no application to Roberts because she claims both exertional and nonexertional impairments, whereas SSR 85-15 provides guidance only for cases in which the claimant asserts 'solely nonexertional impairments'") (quoting SSR 85-15 at 543).  "Furthermore, '[m]ental impairments are generally considered to be nonexertional . . ..'"  Id. (quoting SSR 85-15).

[9]  Plaintiff also argues that the RFC must include non-severe impairments, and indeed "all supportable work related limitations, not just most of the work related limitations."  Plaintiff's Motion at 14.  While plaintiff is correct on the law, he does not identify which non-severe impairments he thinks the ALJ omitted from his RFC analysis.  If plaintiff is referring to his neck, right should and right elbow, that issue was addressed above.

1   Plaintiff was discharged from his hospital stay with a "Condition on Discharge" of "Good,

2   improved."  AR 636.  The Commissioner identifies subsequent examinations that contained

3   "normal examinations of Plaintiff's lungs."  AR 735 (Jason Harper, D.O., May 19, 2009,

4   "Respirations even and unlabored.  Mild wheezes bilateral.  Improved air movement") ,

5   726 (Dr. Harper, October 16, 2009, "Respirations even and unlabored.  Lungs clear to

6   auscultation.  No rhonchi.  No crackles.  No wheezing."), 1079 (Dr. A. Jiraz, November 8, 2010,

7   "clear").  Plaintiff's examinations before his hospitalization and subsequent discharge were also

8   normal.  AR 751 (Dr. Harper, March 3, 2009, "Respirations even and unlabored.  Lungs clear to

9   auscultation.  No rhonchi.  No crackles.  No wheezing."), 756 (Chandra Duggirala, M.D.,

10  "Bilateral air entry equal.  No wheezing, no crackles"), 764 (Dr. Duggirala, "Lungs clear to

11  auscultation bilaterally"), 787 (Nail Amro, M.D., "Clear to auscultation bilaterally.  No wheezes

12  or rhonchi or crackles."), 871 ("Symmetric breath sounds that are clear of crackles and rhonchi.

13  Good airflow throughout.").

14      Even if the ALJ erred by not mentioning asthma at Step 3 however, it would be harmless

15  error if he properly considered asthma as part of the RFC.  See Robbins, 466 F.3d at 885

16  (harmless error exists when it is "clear from the record that an ALJ's error was 'inconsequential to

17  the ultimate nondisability determination'") (quoting Stout, 454 F.3d at 1055).  In fact, the ALJ

18  considered plaintiff's asthma in the RFC, and found that it was "generally well controlled when

19  claimant is compliant with prescribed medication."  AR 330.  The ALJ's conclusion is supported

20  by substantial evidence in the record, as discussed above.  As the Commissioner points out,

21  "[i]mpairments that can be controlled effectively with medication are not disabling."  Warre v.

22  Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).

23      The ALJ further factored in the functional limitations arising from plaintiff's asthma, by

24  limiting plaintiff's work to jobs where he could "avoid exposure to concentrated respiratory

25  irritants secondary to asthma."  AR 328.  This limitation is supported by substantial evidence in

26  the record, namely, the Physical Residual Functional Capacity Assessment completed by M.

27  Friedman, M.D., a "medical consultant."  AR 886-90 (Exh. 15F).  See Magallanes v. Bowen, 881

28  F.2d 747, 752 (9th Cir. 1989) ("the reports of consultative physicians called in by the Secretary

1    may serve as substantial evidence").  According to that report, plaintiff has an environmental

2    limitation under whish he should avoid concentrated exposure to "[f]umes, odors, dusts, gases,

3    poor ventilation, etc." AR 889.  Although the ALJ does not expressly reference this report (and

4    neither the Commissioner nor plaintiff mention it in their briefs to this court), the wording of the

5    ALJ's limitation leads the court to conclude that it is based upon this RFC assessment.

6         B.  Credibility of Plaintiff's Testimony

7        Plaintiff argues that the ALJ improperly failed to credit his testimony concerning the

8    severity of his symptoms.  Although plaintiff does not specify which symptoms he is referring to,

9    his brief only discusses his pain treatment, and accordingly the court will examine the ALJ's

10   rejection of plaintiff's pain allegations.  Plaintiff's brief does not identify which of his

11   impairments he alleges is causing pain, nor which allegations of pain are causing functional

12   limitations, nor to what extent the alleged pain is causing functional limitations.  Accordingly, the

13   court will examine the alleged pain that was specifically rejected by the ALJ, namely, plaintiff's

14   alleged lower back pain and knee pain.  See AR 329.

15       As the ALJ noted, his consideration of plaintiff's pain testimony is a two step process.

16   First:

17           [t]he ALJ must determine whether the claimant has presented
             objective medical evidence of an underlying impairment 'which
18           could reasonably be expected to produce the pain or other
             symptoms alleged.'"   [Lingenfelter v. Astrue, 504 F.3d 1028,
19           1035-36 (9th Cir. 2007)] (quoting Bunnell v. Sullivan, 947 F.2d
             341, 344 (9th Cir. 1991) (en banc) (internal quotation marks
20           omitted)).   In this analysis, the claimant is not required to show
             "that her impairment could reasonably be expected to cause the
21           severity of the symptom she has alleged; she need only show that it
             could reasonably have caused some degree of the symptom."
22           Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Nor must a
             claimant produce "objective medical evidence of the pain or fatigue
23           itself, or the severity thereof." Id.

24   Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  The ALJ here found that plaintiff had

25   cleared the first step in assessing plaintiff's testimony regarding pain: "I find that claimant's

26   medically determinable impairments could reasonably be expected to cause the type of alleged

27   symptoms." AR 329.  Among the alleged symptoms are low back pain and knee pain.

28

Second, where, as here, there is no evidence of malingering:

> "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Smolen, 80 F.3d at 1281; see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). This is not an easy requirement to meet: "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

Garrison, 759 F.3d at 1014-15 (footnote omitted). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, under the Commissioner's own guidelines:

> [b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.

SSR 95-5p, 1995 WL 670415 (emphasis added). More specifically:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186 at *3 (emphasis added).

Plaintiff offered testimony regarding the severity and limiting effects of his pain.  He testified at the hearing before the ALJ that he could not do his prior jobs because of pain in his lower back and his knees.  AR 348.  Plaintiff testified that he wore a brace on his knees so that he wouldn't "collapse."  Id.  He testified that he could not stand or sit for long "without being in a whole lot of pain or under a whole lot of medication."  Id.  The pain also prevents plaintiff from bending over.  AR 356.  Among the medications plaintiff takes for this pain are "morphine" and "Percosets."  Id.  Unsurprisingly, those narcotic medications have the side effect of making plaintiff "tired, sleepy."  AR 350.

1. General credibility

The ALJ stated that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms, are not found credible to the extent they are inconsistent with the above residual functional capacity assessment ['light work,' avoiding 'exposure to concentrated respiratory irritants secondary to asthma']."  AR 328; see Light, 119 F.3d at 792 ("[a]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony").  The ALJ offers plaintiff's alleged non-compliance with recommended medical treatment as a basis for not crediting plaintiff's pain testimony.  AR 329 ("there are multiple references to non-compliance with recommended medical treatment throughout the documentary record").  If supported by the record, this would be one "relevant factor" in determining credibility.  See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (one "relevant factor" in determining credibility "may be 'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment'") (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

1    However, the examples of non-compliance the ALJ offers appear to have nothing to do

2    with medicines relating to plaintiff's allegations of pain.  See AR 329 (lack of compliance with

3    hypertension medication; taking excessive amounts of Celexa [an anti-depressant]; "'poor

4    compliance with medication'" related to hospitalization for "coronary vasospasm").[10]  The

5    evidence directly relating to treatment shows that plaintiff is in compliance, that he takes his pain

6    medication, and that he visits his pain specialist, Cynthia Pena, M.D., at the NorthBay Center for

7    Pain Management.  AR 348, 354, 842 (July 7, 2010 test showing plaintiff is positive for his

8    prescribed "oxycodone" aka Percoset).

9        In short, the ALJ found plaintiff's description of his pain symptoms to be non-credible in

10   a general sense, based upon the above incorrect determinations, and without addressing the

11   factors he is required to address.[11]

12                2.  Credibility of plaintiff's lower back pain allegations

13       The ALJ found plaintiff's "ongoing complaints of chronic low back pain" to be

14   "inconsistent with the clinical findings, including most recently, a 'normal' September 2010 MRI

15   of the lumbar spine."  AR 329 (citing Exh. 12F, AR 843), 330.  However, it is legal error for an

16   ALJ to discount plaintiff's credibility and reject his allegations regarding the intensity, persistence

17   and limiting effects of his lower back pain solely on the basis of a single clinical finding:

18              An individual's statements about the intensity and persistence of
            pain or other symptoms or about the effect the symptoms have on
19              his or her ability to work may not be disregarded solely because
            they are not substantiated by objective medical evidence.'
20

21   SSR 96-7p, 1996 WL 374186 at *1; Light, 119 F.3d at 792 ("a finding that the claimant lacks

22   _____

23   [10]  The ALJ also reported that "[i]n December 2009, claimant reportedly "blacked out" after
     leaving his medications in the group home in which he resided."  AR 329 (citing Exh. 5F).
24   However, plaintiff's black-out was reported in an October 16, 2009 visit (AR 725), and his
     leaving his medications in his group home was reported in a May 19, 2009 visit (AR 735), with
25   nothing in the record connecting the two.  In any event, there is nothing in the record that
     indicates that the medicine plaintiff left behind was related to pain.

26   [11]  The ALJ did consider and reject the third-party statements of people familiar with plaintiff's
     daily activities, on the grounds that they "essentially represent reiteration of claimant's subjective
27   complaints" which, in turn he did not find credible.  AR 329.  Plaintiff does not assert error here,
     so the court does not consider it.

28

1    credibility cannot be premised wholly on a lack of medical support for the severity of his pain").

2                        3.  Credibility of plaintiff's right knee pain allegations

3           The ALJ rejected, or did not fully credit, plaintiff's subjective complaints of knee pain.

4    AR 329.  In apparent explanation for this rejection, the ALJ finds "claimant's allegation of use of

5    a cane in a June 2010 daily activities questionnaire to be unsupported and inconsistent with the

6    medical record."  AR 329 (citing Exh. 5E).  The ALJ also states that plaintiff "underwent only

7    conservative treatment" for his "minimally displaced acute fracture of the proximal fibula."

8    AR 330.  Finally, the ALJ found that plaintiff's subjective complaints were credible "only to the

9    extent that they are consistent with the above-identified range of work at the light exertional

10   level."  AR 329.

11                               i.  The medical record

12          The ALJ finds "claimant's allegation of use of a cane in a June 2010 daily activities

13   questionnaire to be unsupported and inconsistent with the medical record."  AR 329 (citing

14   Exh. 5E).  However, the ALJ identifies nothing in the medical record that is inconsistent with

15   plaintiff's using a cane.  In fact, plaintiff's use of a cane is plainly consistent with a fall he took,

16   on March 24 or 25, 2010 – one month before his claimed onset date – which caused an "acute

17   fracture" of his leg bone.  On March 24 or 25, 2010, plaintiff lost consciousness and fell, injuring

18   his right knee during the fall.  AR 760, 763.  A subsequent x-ray showed a "proximal fibular

19   fracture."  AR 760.  The fibula is a leg bone that runs from the knee to the ankle.  1 Attorneys

20   Medical Advisor (2015) ("1 Med. Adv.") (available on Westlaw) § 2:54 (the fibula "adjoins the

21   tibia near the knee and the astragalus (also called 'talus') at the ankle joint").  In other words,

22   plaintiff fractured his fibula bone near the knee.[12]  Subsequent radiographs and ultrasonographic

23   images showed that the fracture was "minimally displaced."  AR 779 (March 25, 2010), 786

24   (same).  In other words, the fracture was bad enough that the segments of the fractured bone no

25   longer touched, and that "one segment lies to the right or left of the other."  4 Med. Adv. § 35:9.

26   The radiographs and ultrasonogrphic images also showed a "[s]mall suprapatellar effusion."

27   _____

28   [12]  The ALJ found that this was a "severe impairment" at Step 2.  AR 327.

                                            20

1     AR 779, 786.  In other words, fluid above the kneecap.  Stedman's Medical Dictionary

2     ("Stedman's") §§ 280770, 661610 (27th Ed. 2000).

3                     ii.  Conservative treatment

4        The ALJ states that plaintiff "underwent only conservative treatment" for his "minimally

5     displaced acute fracture of the proximal fibula."  AR 330; see Parra v. Astrue, 481 F.3d 742, 751

6     (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is

7     sufficient to discount a claimant's testimony regarding severity of an impairment"), cert. denied,

8     552 U.S. 1141 (2008).  However, the ALJ does not identify any part of the administrative record

9     in support of this statement.  In fact, the administrative record does show that plaintiff complained

10    of knee pain and sought treatment for it, including treatment at a pain clinic, and that he was

11    prescribed – and took – powerful, narcotic pain medications for his pain.  See, e.g., AR 755

12    (NorthBay Hospital March 25, 2010, "minimally displaced acute fracture of the proximal

13    fibula"), 760 (same, March 28, 2010, "right leg pain"), (same, Dr. Braithwaite, March 25, 2010,

14    "right calf pain in addition to chronic knee pain"), 837 (Dr. Pena diagnosing right knee pain

15    "secondary to fibular fracture from fall").[13]  This does not appear to be "conservative" treatment

16    for pain.[14]  See Parra, 481 F.3d at 751 (describing "over-the-counter pain medication" as

17    "conservative treatment"), cert. denied, 552 U.S. 1141 (2008);  Rollins v. Massanari, 261 F.3d

18    853, 856 (9th Cir. 2001) (describing a "recommendation to 'avoid strenuous activities'" as a

19    "conservative course of treatment"); cf., Garrison, 759 F.3d at 1015 n.20 ("we doubt that epidural

20    steroid shots to the neck and lower back qualify as 'conservative' medical treatment").

21        C.  Credibility of Dr. Pena's pain findings

22        On July 7, 2010, Dr. Pena examined and treated plaintiff.  AR 837-47 (Exh. 12F).[15]

23    Before that, plaintiff had been complaining that "his knees have hurt him severely" since his fall,

24    and Dr. Jirasritumrong referred him to Dr. Pena.  AR 837.  Dr. Pena noted that "The patient's

---

[13]  See also, AR 842 (July 7, 2010 test showing plaintiff is positive for his prescribed "oxycodone," aka Percoset).

[14]  In addition, Dr. Pena referred plaintiff to an orthopedic surgeon for his knee pain.  AR 840.

[15]  Dr. Pena prescribed medication for plaintiff's pain at the July 7, 2010 visit.  She continued to treat patient after this initial visit.  See AR 835 (Sep. 3, 2010), 833 (Nov. 3, 2010).

1    right knee hurts much . . . worse than his left knee.  He describes severe aching with sharp

2    spiraling pain that basically radiates upward from the right foot to the knee laterally."  She noted

3    the earlier studies showing "a minimally displaced fracture involving the proximal fibula," and a

4    "small suprapatellar effusion."  AR 838.  Dr. Pena's assessment was "Bilateral knee/shin pain

5    right side greater than left side, likely secondary to fibular fracture from fall in April."  AR 839

6    (emphasis added).  Finally, she recommended that plaintiff be referred "to Dr. Nissen, orthopedic

7    surgeon."  AR 840.

8        On August 2, 2010, Dr. Pena completed a "Chronic Pain Residual Functional Capacity

9    Questionnaire."  AR 848-55 (Exh. 13F).  Regarding plaintiff's knees, Dr. Pena's "positive

10   objective findings" were that plaintiff had a "reduced range of motion" in his left and right knee.

11   AR 849.  Dr. Pena reported that plaintiff's symptoms – but not necessarily restricted to his knee

12   pain – were "frequent[ly]" severe enough "to interfere with attention and concentration necessary

13   to complete even simple tasks."  AR 849.  She further found that plaintiff's symptoms were

14   "severe enough to interfere with attention and concentration necessary to complete even simple

15   tasks" frequently (40% or more of the time).  Id.  Dr. Pena determined that plaintiff was "likely to

16   be absent from work . . . [m]ore than four days per month" as a result of his "impairment or

17   treatment for the impairment."  AR 852.  Dr. Pena concluded that plaintiff could not perform

18   "sedentary" work, and that his impairments were "reasonably consistent with the symptoms and

19   function limitations" described in the evaluation.  AR 852.

20       In a portion of the evaluation which Dr. Pena marked as "per pt report," Dr. Pena reported

21   that plaintiff had "constant pain," could sit no more than 30 minutes at a time, could stand no

22   more than 45 minutes at a time, and needed to have a five-minute walk every five minutes.

23   AR 850.  She reported that plaintiff needed to lie down up to 2 to 3 times per day at

24   "unpredictable intervals," and that with prolonged sitting, plaintiff's legs needed to be elevated 3

25   to 4 times during the day.  AR 849, 850-51.  Dr. Pena also reported that plaintiff could "never"

26   climb ladders, could "rarely" twist, stoop or bend, and could "occasionally" crouch, squat or

27   climb stairs.  AR 851.

28       The ALJ rejected the report of Dr. Pena, one of plaintiff's treating physicians.  There is a

1    procedure for rejecting such an opinion:

> The ALJ must consider all medical opinion evidence. 20 C.F.R.
> § 404.1527(b). Although the ALJ is not bound by an expert medical
> opinion on the ultimate question of disability, she must provide
> "specific and legitimate" reasons for rejecting the opinion of a
> treating physician.  "The ALJ can meet this burden by setting out a
> detailed and thorough summary of the facts and conflicting clinical
> evidence, stating [her] interpretation thereof, and making findings."
> Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

7    Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citation omitted) (quoting Lester v.

8    Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  Although the ALJ gave three "specific" reasons for

9    rejecting Dr. Pena's opinions, none of them withstand examination.

10       First, the ALJ asserts that Dr. Pena's opinions are "not supported by the essentially

11   'normal' orthopedic clinical findings."  AR 330.  That is not correct.  The clinical findings plainly

12   show that plaintiff suffered an "acute fracture" of his proximal fibula – his leg bone near the knee.

13   This is not a "normal" orthopedic finding, and the ALJ makes no reference to Dr. Pena's finding

14   that plaintiff's knee pain was "likely secondary" to this fracture.

15       Second, the ALJ says that "Dr. Pena's assessment represents a vocational opinion outside

16   of her area of expertise."  AR 330.  Dr. Pena, is associated with the NorthBay Center for Pain

17   Management, is a specialist in "pain medicine," and is Board certified in pain medicine.  Her

18   assessment reflects her opinion of how plaintiff's pain affects his ability to work.  The court

19   knows of no basis for the ALJ to assert that her report is outside her area of expertise.

20       If the ALJ is refusing to credit Dr. Pena's opinion because he believes that she cannot

21   opine on a vocational issue – what plaintiff can still do despite his limitations – then his rejection

22   reflects a legal error, inasmuch as he is refusing to consider a medical source opinion that he is

23   legally required to consider.  The Commissioner's own regulations and policy interpretations are

24   clear that the ALJ "must always carefully consider medical source opinions about any issue,

25   including opinions about issues that are reserved to the Commissioner."  SSR 96-5p, 1996 WL

26   374183 at *2 (emphasis added).  The ALJ's statement that Dr. Pena is expressing a "vocational

27   opinion" is simply no basis for not considering or crediting her report.  The Commissioner's

28   regulations require the ALJ to consider such opinions, and to consider them as evidence, even

though he is not required (or permitted) to give them controlling weight, since the ultimate

determination is for the Commissioner:

> Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, <u>your residual functional capacity</u> (see §§ 404.1545 and 404.1546), or the application of <u>vocational</u> factors, the final responsibility for deciding these issues is reserved to the Commissioner

20 CFR §§ 404.1527(d)(2) (emphases added), 416.927(d)(2).  The ALJ seems to be saying that a

medical source should not complete an RFC assessment unless she is also a vocational expert.

But the court knows of no basis for such a requirement.  To the contrary, it is regular practice,

plainly endorsed by the Commissioner, to have doctors complete these forms:

> Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis.

SSR 96-5p at * 4 (footnote omitted).  Indeed, not only are these assessments permitted, ALJs "are

generally <u>required</u> to request that acceptable medical sources provide these statements with their

medical reports." <u>Id.</u> (emphasis added).

Third, the ALJ found that Dr. Pena's assessment was "inordinately based upon claimant's

subjective complaints that I find not fully credible." AR 331.  The ALJ "may reject a treating

physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

properly discounted as incredible." <u>Tommasetti</u>, 533 F.3d at 1041 (quoting <u>Morgan v. Comm'r

Soc. Sec. Admin.</u>, 169 F.3d 595, 602 (9th Cir. 1999)).

Some portions of Dr. Pena's report do indicate that they depend, at least in part, upon the

patient's own self-report.  <u>See</u> AR 849 (Question No. 5, "per pt report"), 850-51 (No. 13, "per pt

report").  However, as discussed above, the ALJ has not properly discounted plaintiff's self-

reports as incredible.

In addition, other portions of Dr. Pena's report give no indication that they are based upon

plaintiff's self-report, including Dr. Pena's diagnosis of "chronic intractable pain" in the knee,

24

1   and a "poor prognosis" as to the potential resolution of symptoms.  See AR 849 (Nos. 2 & 3).

2   Also, it is Dr. Pena's "objective finding[]" that plaintiff has "reduced range of motion"  in his left

3   and right knee.  See AR 849 (No. 6).  There is also no indication that Dr. Pena's other conclusions

4   are based upon plaintiff's self-report, rather than the clinical findings Dr. Pena discusses.  Those

5   conclusions are that: the pain was "frequent[ly]" severe enough "to interfere with attention and

6   concentration necessary to complete even simple tasks" (AR 849, No. 9); that plaintiff was

7   "likely to be absent from work . . . [m]ore than four days per month" as a result of his

8   "impairment or treatment for the impairment" (AR 852); that plaintiff could not perform

9   "sedentary" work (AR 852, No. 15); and that his impairments were "reasonably consistent with

10   the symptoms and function limitations" described in the evaluation (AR 852, No. 16).

11         D.  New evidence

12         Plaintiff complains that the Appeals Council did not consider medical evidence which he

13   submitted to the Council on January 22, 2014, one day before the Appeals Council denied review

14   of the ALJ's decision.  Plaintiff's Motion at 18; see AR 10-92.  Under the Commissioner's

15   regulations, the Appeals Council will consider such evidence "only where it relates to the period

16   on or before the date of the administrative law judge hearing decision."  20 C.F.R. §§ 404.970(b)

17   (emphasis added), 416.1470(b).

18         Here, the medical evidence plaintiff submitted to the Council is of treatment he received

19   in August and September 2013.  See AR 10-92.  The submitting letter to the Council offers no

20   explanation for why treatment received in August and September 2013 had any bearing on the

21   ALJ decision of October 12, 2012, ten months before.  On appeal to this court, plaintiff asserts

22   that:

23         these records concerned medical impairments that were alleged by
            the plaintiff prior to the date the claim was adjudicated on October
            12, 2012.  The records showed the progressive worsening of
24         plaintiff's symptoms over time.

25   Plaintiff's Motion at 18.  Plaintiff appears to be correct on the law, that is, if the late-filed medical

26   evidence related to his condition before the ALJ decision date, the Appeals Council should have

27   considered it.  See Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1232 (9th

28   Cir. 2011) (Appeals Council should have considered medical evaluation made after insurance

1    date, where "the medical source statement indicates that Dr. Thompson's medical assessment

2    encompassed the period from the date of disability onset in August 1999, around the time of

3    Taylor's work-related injury, until the date of his evaluation").  However, plaintiff does not

4    identify anything in his 82-page submission that supports his claim that these records shed light

5    on his medical condition up to the date of the ALJ's decision.[16]  Therefore, the court cannot find

6    that the Appeals Council should have considered this evidence, or that this court should consider

7    it.

8            E.  Remedy

9            As discussed above, the ALJ failed to provide adequate reasons for rejecting the opinion

10   of plaintiff's treating physician, and the ALJ improperly rejected plaintiff's testimony regarding

11   his limitations.  In these circumstances, this court is required to credit that testimony and the

12   treating physician's opinion, as a matter of law:

13                  Where the Commissioner fails to provide adequate reasons for
                    rejecting the opinion of a treating or examining physician, we credit
14                  that opinion "as a matter of law."  Hammock v. Bowen, 879 F.2d
                    498, 502 (9th Cir. 1989); see also [United States v. Santana, 908
15                  F.2d 506, 506 (9th Cir. 1990) (per curiam), cert. denied, 498 U.S.
                    1036 (1991)] (remanding for payment of benefits where Secretary
16                  did not provide adequate reasons for disregarding examining
                    physician's opinion). Similarly, where the ALJ improperly rejects
17                  the claimant's testimony regarding his limitations, and the claimant
                    would be disabled if his testimony were credited, "we will not
18                  remand solely to allow the ALJ to make specific findings regarding
                    that testimony."  Varney v. Secretary of Health and Human
19                  Services, 859 F.2d 1396, 1401 (9th Cir. 1988) (Varney II). Rather,
                    that testimony is also credited as a matter of law.  Id.
20

21   Lester, 81 F.3d at 834.

22           Crediting the testimony and opinion as a matter of law, plaintiff has a reduced range of

23   motion in his right knee, is unable to sit more than 30 minutes at a time, is unable to stand more

24   than 45 minutes at a time, must use a cane when standing or walking, and would be absent from

25   _____

26   [16]  Plaintiff also states that the refusal to consider that evidence "may be 'moot' in the sense that
     the defendant in adjudicating the plaintiff's subsequent claim *apparently* gave substantial weight
27   to these records based on the favorable determination that the plaintiff was disabled as of October
     13, 2012."  Plaintiff's Motion at 18 (emphasis in text).
28

1    work more than four work days per month.  AR 849-52 (Dr. Pena), 348 (plaintiff's testimony).

2            Given these limitations, the ALJ erred in finding that plaintiff "has the residual functional

3    physical capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b)."

4    AR 328.  "Light work" includes the ability to do "sedentary work."  20 C.F.R. Pt. 404, Subpt. P,

5    App. 2 § 202.00 ("The functional capacity to perform a full range of light work includes the

6    functional capacity to perform sedentary as well as light work").  Sedentary work, in turn,

7    "requires that an individual be able to stand and walk for a total of approximately 2 hours during

8    an 8-hour workday," and he "must be able to remain in a seated position for approximately

9    6 hours of an 8-hour workday."  SSR 96-9p.[17]  Indeed, the ALJ erred in finding that plaintiff has

10   the RFC to do any work, since he is likely to miss four days of work per month, and "[m]issing

11   two unscheduled days a month would not allow for any employment."  AR 360 (testimony of

12   vocational expert).

13           Since plaintiff "does not have the residual functional capacity to perform any work," he

14   "is disabled."  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Since plaintiff meets the Step 5

15   disability determination once the testimony and opinion are credited, "[n]o purpose would be

16   served by remanding for further proceedings."  Lester, 81 F.3d at 834.  Indeed, the Ninth Circuit

17   instructs that this court should "remand for an immediate award of benefits" where, as here:

18               (1) the ALJ failed to provide legally sufficient reasons for rejecting
                 the evidence; (2) there are no outstanding issues that must be
19               resolved before a determination of disability can be made; and (3) it
                 is clear from the record that the ALJ would be required to find the
20               claimant disabled were such evidence credited.

21   Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Accordingly, the court will remand for

22   the immediate calculation and award of benefits.

23   ////

24   ////

25   ────────────────────
     [17]   The court is not crediting as true Dr. Pena's ultimate conclusion that plaintiff cannot perform
26   sedentary work, see AR 852 (Question 15), as that is a conclusion that is left to the
     Commissioner, subject to this court's review.  See SSR 96-5p (Medical Source Opinions on
27   Issues Reserved to the Commissioner, which include "[w]hat an individual's RFC is").  It is Dr.
     Pena's underlying medical opinions that the court credits as true.

28

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21), is DENIED;

3. This matter is REMANDED to the Commissioner for the immediate calculation and award of benefits; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: July 2, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE